UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TABITHA D. LEWIS,

                          Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                          Defendant.

Case No. 3:11-cv-05482-RJB-KLS

REPORT AND RECOMMENDATION

Noted for March 23, 2012

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On April 16, 2009, plaintiff filed an application for disability insurance and another one for SSI benefits, alleging disability as of April 18, 2007, due to obesity, migraines, a bipolar disorder, ankle injuries, and arthritis. See Administrative Record ("AR") 19, 138, 145, 166. Both applications were denied upon initial administrative review and on reconsideration. See AR 19,

REPORT AND RECOMMENDATION - 1

79, 83, 93, 98.  A hearing was held before an administrative law judge ("ALJ") on May 18, 2010, at which plaintiff, represented by counsel, appeared and testified. <u>See</u> AR 42-70.

On June 29, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. <u>See</u> AR 19-36.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 11, 2011, making the ALJ's decision defendant's final decision. <u>See</u> AR 1; <u>see</u> <u>also</u> 20 C.F.R. § 404.981, § 416.1481.  On June 24, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. <u>See</u> ECF #1-#3.  The administrative record was filed with the Court on September 13, 2011. <u>See</u> ECF #13.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for further administrative proceedings, because the ALJ erred: (1) in failing to find her obesity and migraines were severe impairments; (2) in evaluating the medical evidence in the record; (3) in discounting plaintiff's credibility; (4) in assessing her residual functional capacity; and (5) in finding her to be capable both of returning to her past relevant work and performing other work existing in significant numbers in the national economy.  Plaintiff further argues the Appeals Council erred in failing to specifically address additional evidence submitted to it after the ALJ had issued his decision.  For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be reversed, that this matter be remanded for further administrative proceedings.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986).

REPORT AND RECOMMENDATION - 2

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Step Two Determination

        Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of the evaluation process, the ALJ must determine if an impairment is "severe." Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

        An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual['s] ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d

1152, 1159-60 (9th Cir. 2001); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998). The step

two inquiry described above, however, is a *de minimis* screening device used to dispose of

groundless claims. <u>See</u> <u>Smolen</u>, 80 F.3d at 1290.

In this case, the ALJ found plaintiff had severe impairments consisting of traumatic

arthritis in the ankle, low back and knee pain, a mood disorder, posttraumatic stress disorder with

medical and psychological factors, and borderline traits. <u>See</u> AR 22. Plaintiff argues the ALJ

erred in not also finding her obesity and migraines were severe impairments. Regarding obesity,

the undersigned finds no error here, as there is no objective medical evidence that that condition

has resulted in actual work-related limitations. Plaintiff notes she was assessed with a body mass

index ("BMI") of "greater than 40" (<u>see</u> AR 313, 546, 561), which represents "the greatest *risk*

for developing obesity related impairments" and which "*can* affect" various work-related tasks.

ECF #18, pp. 7-8 (citing SSR 02-1p, 2000 WL 628049) (emphasis added).

The mere fact that a health condition poses a potential "risk" for developing some future

impairment or that it "can" affect an individual's ability to work, does not necessarily mean that

individual actually has developed such an impairment or been so affected. <u>See</u> <u>Matthews v.</u>

<u>Shalala</u>, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of

disability). Indeed, as just discussed, none of the medical evidence in the record – including the

specific evidence cited by plaintiff – contain such findings. Plaintiff points to her own testimony

concerning certain alleged symptoms that *could* be supported by "[o]besity at the extreme level"

(ECF #18, p. 8), but again this does not constitute objective medical evidence. That is, although

the ALJ must take into account a claimant's pain and other symptoms at step two (<u>see</u> 20 C.F.R.

§ 404.1529, 20 C.F.R. § 416.929), the severity determination is made solely on the basis of the

objective medical evidence in the record. <u>See</u> SSR 85-28, 1985 WL 56856 *4 ("At the second

step of sequential [disability] evaluation [process] . . . , medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.").

As for plaintiff's migraines, the undersigned agrees the ALJ erred in failing to find them to be a severe impairment. In late April 2009, treating physician, Chiyang Wu, D.O., diagnosed plaintiff with migraines, finding that impairment resulted in her being moderately limited in the ability to see, communicate and understand or follow directions. See AR 451 (defining moderate limitation to mean "[s]ignificant interference with the ability to perform one or more basic work-related activities"). He also found plaintiff to be limited to performing sedentary work it appears at least in part on the basis of the above impairment. See id. The record also reveals that another, non-examining physician opined that plaintiff should avoid concentrated exposure to vibration and noise due to her history of migraines. See AR 587, 620.

Defendant argues the record does not contain "the necessary 'diagnoses' or 'laboratory findings' and consistent representations regarding symptoms needed to establish" her migraines "as a medically determinable impairment." ECF #19, p. 6. The record that was before the ALJ, however, is replete with diagnoses of migraines that appear for the most part to have not been entirely mitigated. See AR 318, 320-21, 469, 479, 482, 484, 486, 491, 506, 508, 512, 531, 616, 650, 661. Defendant also argues any error committed by the ALJ here was harmless, given that he did not deny plaintiff's claim at step two, but went on to consider all of her impairments later in evaluating her residual functional capacity. See Hubbard v. Astrue, 2010 WL 1041553 *1 (9th Cir. 2010) (because claimant prevailed at step two and ALJ considered claimant's impairments later in sequential analysis, any error in omitting those impairments at step two was harmless) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (finding ALJ's error in failing to list bursitis at step two to be harmless, where ALJ's decision showed any limitations posed thereby

was considered later in sequential disability evaluation process).

The ALJ's analysis of plaintiff's migraines in assessing her residual functional capacity, though, is not without error. See Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ in failing to consider claimant's obesity at step two harmless, because ALJ did not err in evaluating claimant's impairments at later steps). As noted above, the medical evidence that was in the record before the ALJ indicated plaintiff's migraines resulted in limitations affecting her ability to see, communicate and understand or follow directions, in a restriction to performing sedentary work and in a lessened capacity for tolerating vibration and noise. But in assessing plaintiff's residual functional capacity, the ALJ did not include any limitation regarding seeing, communicating and understanding or following directions, or provide any explanation as to why he did not adopt any such limitations, despite giving "significant weight" to Dr. Wu's opinion. AR 24, 29. Therefore, the ALJ's error here at step two was not harmless.

II.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

"must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may

constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

As discussed above, the ALJ stated he accorded "significant weight" to the opinion of Dr. Wu that plaintiff "was limited to [a] sedentary level of work due to traumatic arthritis, low back pain, knee pain, and migraine headaches with limitations in [her] ability to sit, stand, walk, lift, carry, climb and stoop," because that opinion was "consistent with the record as a whole." AR 29. Plaintiff argues that the ALJ's statement notwithstanding, the ALJ erred by failing to adopt all of the functional limitations Dr. Wu assessed. The undersigned agrees that because, also as discussed above, the ALJ erred in failing to properly analyze the medical evidence in the record concerning the limitations stemming from plaintiff's migraines – including that contained in Dr. Wu's opinion – it is far from clear that the residual functional capacity ("RFC") with which he assessed plaintiff is entirely accurate and free of error.

The undersigned, however, disagrees that Dr. Wu found plaintiff to be restricted to *less* than sedentary work, as the definition thereof contained in the form Dr. Wu used to provide his opinion at the time, largely matches the definition of sedentary work used in the Social Security context. See AR 451; 20 C.F.R. § 404.1567(a), 20 C.F.R. § 415.967(a).[1] In addition, none of the

---

[1] These regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Id. The requirements of sedentary work are further described in relevant part as follows:

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally

REPORT AND RECOMMENDATION - 8

other, non-exertional limitations noted by Dr. Wu are inconsistent with that definition. Nor does the undersigned find persuasive plaintiff's assertion of error on the basis that Dr. Wu did not contemplate the ability to sustain regular, full-time sedentary work.

It is true that "[o]rdinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing basis**," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 *2 (emphasis in original). The ALJ's assessment of a claimant's residual functional capacity thus "must include a discussion of the individual's abilities on that basis." Id. (emphasis added). But the undersigned agrees with the Fifth Circuit that a finding that a claimant's ability to sustain regular, full-time employment is subsumed within the RFC. See Frank v. Barnhart, 326 F.3d 618, 621 (5th Cir. 2003) (rejecting claimant's argument that separate findings must be made "on 'obtaining' and 'maintaining' a job in every case," even those in which claimant does not suggest there is any difference between issue of ability to work and ability to sustain it, noting further that because nothing suggested claimant could not work on sustained basis, ALJ was not required to make express determination as to whether work could be maintained on such basis); see also Perez v. Barnhart, 415 F.3d 457, 466 (5th Cir. 2005) (noting claimant failed to offer any evidence that his condition waxed and waned in intensity such that ability to maintain work was not adequately taken into account in his RFC determination). There is nothing in the opinion of Dr. Wu – or elsewhere in the record regarding plaintiff's physical capabilities – to indicate she is

---

total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-9p, 1996 WL 374185 *3.

REPORT AND RECOMMENDATION - 9

1   unable to sustain regular, full-time employment.[2]

2   III.   The ALJ's Assessment of Plaintiff's Credibility

3          Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

4   642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

5   In addition, the Court may not reverse a credibility determination where that determination is

6   based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for

7   discrediting a claimant's testimony should properly be discounted does not render the ALJ's

8   determination invalid, as long as that determination is supported by substantial evidence.

9

10  Tonapetyan , 242 F.3d at 1148.

11         To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

12  reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

13  testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

14  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

15  claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

16  and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of

17  malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

18

19         In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

20  credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

21  symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  The

22

23  ─────────────────

24  [2] Accordingly, the undersigned rejects plaintiff's further contention that the ALJ should have re-contacted Dr. Wu
    regarding the findings contained, and limitations assessed, in his opinion. See Mayes v. Massanari, 276 F.3d 453,
    459 (9th Cir. 2001) (ALJ's duty to further develop record triggered only when there is ambiguous evidence or when
25  record is inadequate to allow for proper evaluation of evidence); 20 C.F.R. § 404.1512(e)(1) (providing that when
    evidence received from medical source is inadequate to determine whether a claimant is disabled, that source will be
    re-contacted to seek additional evidence or clarification, but only when that source's report "contains a conflict or
26  ambiguity that must be resolved, . . . does not contain all the necessary information, or does not appear to be based
    on medically acceptable clinical and laboratory diagnostic techniques"); see also 20 C.F.R. § 416.912(e)(1).

ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Here, the ALJ discounted plaintiff's credibility in part because her "alleged symptoms and functional limitations" were "insufficiently substantiated by the record to the degree alleged." AR 27; see also AR 28. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff does not challenge this particular aspect of the ALJ's credibility finding. Further, except for the medical evidence in the record concerning her migraines – which, again, for the reasons discussed above, the ALJ failed to properly consider – plaintiff has failed to show the substantial evidence in the record does not support the ALJ in discounting her credibility on this basis.

The ALJ also discounted plaintiff's credibility in part for the following reasons:

Treatment notes from July 2009 documented that the claimant's bipolar and depression symptoms were stable with medication including Lamictal and Paroxetine (Ex. 17F, p. 4).

Subsequent treatment notes from March 2010 indicated that the claimant's bipolar symptoms continued to be stable with medication along with normal activity, normal energy levels, and no changes in appetite (Ex. 24F, pp. 5-6).

AR 28. The ALJ may discount a claimant's credibility on the basis of medical improvement. See Morgan, 169 F.3d at 599; Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The undersigned agrees with plaintiff that as discussed above, the record does not support the ALJ's findings here, at least in regard to her migraines, as it actually appears to show resolution or control thereof has not been consistently achieved. On the other hand, plaintiff once more has not shown this to be the case with respect to plaintiff's mental health symptoms, and indeed she provides no specific argument in regard thereto, and thus here too has not met her burden of proof. See Carmickle v.

Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued

with specificity will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d

1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to court's

order was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and

distinctly argued in opening brief ordinarily will not be considered).

Next, the ALJ discounted plaintiff's credibility because:

Further inconsistencies in the record include when the claimant alleged that
she attempted suicide in April 2009 by taking narcotics (Ex. 8F). However,
the hospital records indicated the claimant's actions were not planned and not
considered a suicide attempt; the claimant herself admitted her actions were
an attempt to get the attention of her husband (Ex. 8F, p. 2). The treatment
notes indicated the claimant's reported improvement with treatment with
Lamictal including stabilization of mood and decreased anxiety and
presentment as hopeful. The attending psychiatrist noted the claimant
appeared only "mildly" anxious and able to deal with her situation with no
imminent risk for self-harm. However, the claimant reported to various
providers and examiners that this incident was a suicide attempt (*See, e.g.*,
Exs. 9F, 16F). These inconsistent statements do not enhance her credibility.

In addition, the claimant reported during an initial evaluation in January 2010
at Sea Mar that she had not returned to work because she was "raising her
daughter and afraid to go out looking for work" rather [than] due to physical
and mental limitations as alleged (Ex. 26F, p. 9). She also admitted that she
was never fired from past jobs, but rather was "laid off" due to lack of work.
The claimant also stated no prior disciplinary problems at work despite her
allegations of irritability and anger management problems. The claimant
previously reported in December 2007 that she was "uncomfortable" at the
idea of working because she would have to place her daughter in daycare (Ex.
12F, p. 85). I find these various inconsistencies between the claimant's
allegations and the evidence in the record indicative of exaggeration by the
claimant and possible secondary gain motive which further undermines her
credibility.

AR 28-29 (internal footnotes omitted); see Smolen, 80 F.3d at 1284 (in discounting credibility,

claimant's work record, prior inconsistent statements and other testimony that "appears less than

candid" may be considered); see also Tidwell, 161 F.3d at 602 (ALJ may consider motivation

and issue of secondary gain in rejecting symptom testimony); Matney on Behalf of Matney v.

REPORT AND RECOMMENDATION - 12

Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).  Plaintiff argues her statements regarding her fear for her daughter fit her anxiety profile, but the ALJ's interpretation of those statements is equally valid.  See Allen, 749 F.2d at 579 (if evidence admits of more than one rational interpretation, court must uphold defendant's decision).  Further, no medical source in the record has attributed plaintiff's statements to her anxiety or other mental health disorder.  As such, the undersigned finds no error here.

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the residual functional capacity:

**. . . [T]o perform sedentary work . . . except the claimant can lift and/or carry 10 lbs. occasionally and frequently; stand and/or walk for a total of**

REPORT AND RECOMMENDATION - 13

**at least 2 hours in an 8 hour day; and sit (with normal breaks) for a total of about 6 hours in an 8 hour day. The claimant can occasionally perform pedal pushing bilaterally. The claimant can never climb ladder/rope/scaffolds, but can occasionally climb ramp/stairs, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to noise, vibration, and hazards. Further, the claimant is able to learn and carry out simple and more detailed tasks, and is limited to superficial contact with coworkers and the public.**

AR 24 (emphasis in original) (internal footnote omitted). Plaintiff argues the ALJ erred here by failing to properly evaluate her obesity and migraines and by failing to give sufficient reasons for rejecting Dr. Wu's opinion. Because, for the reasons discussed above, the ALJ erred in his evaluation of the medical evidence in the record concerning plaintiff's migraines, it also cannot be said that the ALJ's RFC assessment is supported by substantial evidence at this time. Thus, the undersigned finds here too the ALJ erred.

V.     The ALJ's Step Four Determination

Plaintiff has the burden at step four of the disability evaluation process to show she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). In this case, the ALJ found plaintiff was capable of performing her past relevant work as a clerk and an assembler, as it did not require performing work-related activities precluded by her residual functional capacity. See AR 32. Plaintiff argues the ALJ erred in so finding, as her self-reports concerning her past relevant work are inconsistent with the RFC with which the ALJ assessed her. That is, plaintiff argues she reported performing some functions of her past work at a level greater than that assessed by the ALJ. While this appears to be true in regard to plaintiff's clerical work (see AR 24, 32, 181, 185), such is not so with respect to her work as an assembler (see AR 24, 32, 182),[3] and thus, because of the latter, this forms an inadequate basis for finding

---

[3] Plaintiff argues her assembler job is inconsistent with the ALJ's assessed need to avoid concentrated exposure to noise, vibrations and hazards and limitation to simple and more detailed tasks. But there is no indication from her description of that job that it involved concentrated exposure to noise, vibrations and hazards. See AR 182. Nor is

reversible error. Nevertheless, the ALJ's step four determination cannot be upheld given the ALJ's errors in evaluating the medical evidence in the record concerning her migraines and in assessing her residual functional capacity discussed previously.

VI.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), 20 C.F.R. § 416.920(d), (e). The ALJ can do this either through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). The Grids may be used only if they "*completely and accurately* represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in original). Thus, the claimant "must be able to perform the *full range* of jobs in a given category." Id. (emphasis in original). But if there are "significant non-exertional impairments," reliance on the Grids is not appropriate.[4] Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids).

As with his step four finding, the ALJ's alternative finding at step five that plaintiff could perform other jobs existing in significant numbers in the national economy (see AR 32-35) is not supported by substantial evidence, given his error in evaluating the objective medical evidence in

---

there any indication that an ability to perform more detailed tasks is inconsistent with the ability to use machines, tools and equipment, employ technical knowledge and skills and write and complete reports. See id. Plaintiff's mere assertion to the contrary is insufficient to prove otherwise. As such, the undersigned also rejects plaintiff's assertion that a vocational expert was required to resolve the particular vocational issues she alleges here.

[4] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b), 20 C.F.R. § 416.969a(b). "Nonexertional limitations" affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1), 20 C.F.R. § 416.969a(c)(1).

REPORT AND RECOMMENDATION - 15

the record concerning her migraines. Plaintiff also argues the non-exertional limitations the ALJ included in his RFC assessment – namely, occasional climbing of ramps and stairs, occasional stooping, kneeling, couching, and crawling, no climbing of ladders, ropes or scaffolds, avoiding concentrated exposure to noise, vibrations and hazards, simple and more detailed tasks, and superficial contacts with co-workers and the public – precluded him from relying on the Grids to find her not disabled at step five as well.

The undersigned agrees that the restriction to only superficial contact with co-workers is a significant non-exertional limitation that makes reliance on the Grids inappropriate here. It is difficult to see how such a limitation – as opposed to, say, only occasional contact with one's co-workers – would not have a significant impact on plaintiff's ability to perform a full range of sedentary work. See SSR 85-15, 1985 WL 56857 at *4 (noting "[a] substantial loss of ability" to respond appropriately to co-workers "would severely limit the potential occupational base"). The other assessed limitations, however, do not appear to rise to a level sufficient for reliance by the ALJ on the Grids to be improper, since again plaintiff is not being required to perform above the sedentary level. For example, a limitation to understanding, carrying out and remembering simple instructions would *not* severely limit the potential occupational base contemplated by the Grids. See id. Nor would the postural or environmental limitations with which the ALJ assessed plaintiff seem to preclude such work. See id. at 6-8.[5]

---

[5] SSR 85-15 provides in relevant part here:

> a. Limitations in *climbing and balancing* can have varying effects on the occupational base, depending on the degree of limitation and the type of job. Usual everyday activities, both at home and at work, include ascending or descending ramps or a few stairs and maintaining body equilibrium while doing so. These activities are required more in some jobs than in others, and they may be critical in some occupations. Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. Certain occupations, however, may be ruled out; e.g., the light occupation of construction painter, which requires climbing ladders and scaffolding, and the very heavy occupation of fire-fighter, which sometimes requires the individual to climb

VII.    The Additional Evidence Submitted to the Appeals Council

The record contains additional evidence submitted to the Appeals Council after the ALJ issued his decision, including the late August 2010 opinion of Michael Brown, Ph.D., who found a number of moderate to marked mental functional limitations. See AR 695-701; see also AR 705-39 (containing additional medical evidence of plaintiff's physical and mental impairments). With respect to that evidence, the Appeals Council stated that it had "considered" it, but found it did "not provide a basis for changing" the ALJ's decision. AR 1-6.  Plaintiff argues the Appeals Council erred in failing to provide a more specific evaluation of that evidence.  But as noted by defendant, this Court lacks jurisdiction to review the Appeals Council's denial of plaintiff's request for review. See Mathews v. Apfel, 239 F.3d 589, 594 (3rd Cir. 2001) (noting no statutory authority, source of district court's authority to review, authorizes review of Appeals Council

---

poles and ropes. Where the effects of a person's actual limitations of climbing and balancing on the occupational base are difficult to determine, the services of a VS may be necessary.

b. *Stooping, kneeling, crouching, and crawling* are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending. Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. However, because of the lifting required for most medium, heavy, and very heavy jobs, a person must be able to stoop frequently (from one-third to two-thirds of the time); inability to do so would substantially affect the more strenuous portion of the occupational base. This is also true for crouching (bending the body downward and forward by bending both the legs and spine). However, crawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work. This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees).

. . .

Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.

Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions.

Id. at *6-*7 (emphasis in original).

REPORT AND RECOMMENDATION - 17

decisions to deny review). This is because "[w]hen the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review," and thus "the ALJ's decision becomes the final decision of [defendant]." Taylor v. Commissioner of Social Security Admin., 659 F.3d 1228, 1231 (9th Cir. 2011). As such, the Court "may neither affirm nor reverse the Appeals Council's decision." Id.

The Appeals Council, furthermore, is "'not required to make any particular evidentiary finding' when it reject[s] evidence . . . obtained after an adverse administrative decision." Id. at 1232 (quoting Gomez v. Chater, 74 F.3d 967, 972 (9th Cir. 1996)). Therefore, other than noting it considered the report, the Appeals Council did not have to give specific attention to, or provide legally sufficient reasons for rejecting, it. See 20 C.F.R. § 404.970(b) (requiring that Appeals Council only "consider" any "new and material evidence" submitted to it, where it "relates to the period on or before the date of the [ALJ's] hearing decision," and "evaluate the entire record including the new and material evidence" and "review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record.") (emphasis added); see also 20 C.F.R. §§ 404.976(b), 404.979, 416.1470(b), 416.1476(b), 416.1479. This is what the Appeals Council did in this case.

The parties also disagree on how this Court should treat the above additional evidence in regard to determining whether this matter should be reversed and remanded. Specifically, while neither party contends the Court may not consider such evidence in determining whether the ALJ's decision is supported by substantial evidence,[6] defendant argues a showing of good cause

---

[6] The Ninth Circuit so held in Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993); see also Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (citing Ramirez to find that additional materials submitted to Appeals Council properly may be considered, because Appeals Council addressed them in context of denying claimant's request for review); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) (again citing Ramirez in holding evidence submitted to Appeals Council is part of record on review to federal court). In Ramirez, the Ninth Circuit found specifically as follows:

is required to remand this matter based on that evidence, whereas plaintiff asserts there is no such requirement.  The issue of whether good cause must be shown in this context, though, has not been decided in this Circuit.[7]  Nor has plaintiff argued – at least not in her opening brief as required – that this matter should be remanded for an award of benefits.[8]  The undersigned thus finds resolution of this issue to be unnecessary, given that this matter should be remanded in any event in light of the ALJ's errors discussed above, where upon the additional evidence submitted by plaintiff may be further considered if deemed appropriate.

---

> Although the ALJ's decision became [defendant's] final ruling when the Appeals Council declined to review it, the government does not contend that the Appeals Council should not have considered the additional report submitted after the hearing, or that we should not consider it on appeal.  Moreover, although the Appeals Council "declined to review" the decision of the ALJ, it reached this ruling after considering the case on its merits; examining the entire record, including the additional material; and concluding that the ALJ's decision was proper and that the additional material failed to "provide a basis for changing the hearing decision."  For these reasons, we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council.

Id. at 1454.

[7] Defendant cites Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001), noting that in that case the Ninth Circuit applied the standard or judicial review set forth in 42 U.S.C. § 405(g) to determine whether to remand that case in light of additional evidence submitted to the Appeals Council. Id. at 461-62.  Under that standard, to justify remand, the claimant must show that the additional evidence is both "new" and "material" to determining disability, and that he or she "had good cause for having failed to produce that evidence earlier." Id. at 462.  But the Court of Appeals expressly stated that it did not have to decide in Mayes whether good cause was required, as the claimant "conceded in her briefs that good cause was indeed required." Id.  On the other hand, the Ninth Circuit in Mayes also rejected the argument that plaintiff now makes, that pursuant to Ramirez and its progeny, "good cause is required only when new evidence is submitted to a district court," expressly stating as follows:

> Mayes misapprehends Ramirez.  Because the parties agreed that the new evidence submitted for the first time to the Appeals Council should be considered, id. at 1451-52, Ramirez does not address whether submissions to the Appeals Council are or are not subject to the good cause requirement.

Id. at 461 n.3 (emphasis added).  Nor does the undersigned find persuasive plaintiff's reliance on a recent Social Security Ruling to argue that a showing of good cause now is required only in the Social Security Administration's Boston Region. See SSR 11-1p, 2011 WL 3962767 at *3 and n.1.  First, as defendant points out, that SSR – the pertinent section of which deals with claims pending before the Appeals Council – went into effect after the Appeals Council denied plaintiff's request for review in this case. See id at *1; AR 1.  Second, plaintiff presents no actual evidence this SSR merely "betrays the underlying agency policy, that there never was a good cause requirement" (ECF #20, p. 5.), and the undersigned finds no indication of such a policy or intent in that SSR.

[8] See Paladin Associates., Inc., 328 F.3d at 1164 (by failing to make argument in opening brief, objection to court's order was waived); Kim, 154 F.3d at 1000 (matters not specifically and distinctly argued in opening brief ordinarily will not be considered)

REPORT AND RECOMMENDATION - 19

VIII.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's migraines, her residual functional capacity, and her ability to return to her past relevant work, as well as her ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded for further administrative proceedings.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as

REPORT AND RECOMMENDATION - 20

well that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See</u> <u>also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 23, 2012**, as noted in the caption.

DATED this 5th day of March, 2012.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21